IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES M. GREGG** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANCIS S. HALLINAN, et al.** | : | **NO. 15-6577** |

MEMORANDUM

**KEARNEY, J.**                                                                                                    **JULY 1, 2016**

A *pro se* foreclosed property owner challenging a lender's lawyers' conduct under the Fair Debt Collection Practices Act must plead facts suggesting the lawyers violated the law. Absent this showing, the owner cannot proceed into discovery. As the owner admits in his filings and otherwise has not plead conduct which violates the statute after two attempts, we grant the lawyers' motion to dismiss the amended complaint in the accompanying Order.

**I.      Alleged facts.**

Upon our grant of leave after we dismissed his complaint[1], Charles M. Gregg now sues a lender's lawyers for allegedly violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e and 1692g (the "Act").[2] Gregg alleges Attorney Davis sent him a "Debt Collection letter" on April 10, 2015.[3] Attorney Davis represented the mortgage company retained his employer, the Phelan Firm, as the "mortgage company's new counsel" attempting to collect a debt related to Gregg's primary residence.[4] Attorney Davis listed the principle balance, interest accrued, and other expenses resulting in a total debt of $121,468.55.[5] He additionally identified the creditor as Deutsche Bank National Trust Company, as trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W2.[6] Attorney Davis instructed Gregg on how to dispute the validity of the debt:

> Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by our firm. If you notify our office in writing within thirty (30) day period that the debt or any portion thereof is disputed, we will obtain and provide you with verification of the debt by mail. Upon your written request within the thirty (30) day period, our office will provide you with the name and address of the original creditor, if different from the current creditor.[7]

On April 16, 2015, Attorney Cressman also of the Phelan Firm filed a praecipe to issue a writ in the underlying foreclosure action pending in the Philadelphia Court of Common Pleas.[8]

On April 24, 2015, Gregg sent Attorney Davis a "Notice of Dispute-Demand for Validation and Proof of Claim".[9]  Gregg's notice listed various requests for information concerning the original loan on his primary property.[10]  Gregg requested Davis provide "certified proof you are a registered debt collection agent d/b/a/ in the state of Pennsylvania."[11]  Gregg further requested "all complete open records of this alleged account file." and "verification from the stated creditor that you are authorized to act for them."[12]  Gregg advised if the Phelan Firm failed to verify the debt and provide the requested information within thirty (30) days, the debt would be rendered invalid and "continued pursuit of collection activity will result in tort action against you and your company pursuant to the [Act] and any other state and/or federal violations thereof."[13]  Gregg alleges the Phelan Defendants violated the Act by failing to respond to his notice of dispute within five (5) days, which he contends is required by the Act.[14]

On May 6, Attorney Hallinan of the Phelan Firm filed an "affidavit of service of notice of sale upon Charles Gregg" on the state court docket, dated April 24, 2015.[15]  On June 17, 2015, Attorney Cressman of the Phelan Firm filed a notice of a continued sheriff's sale.[16]  Gregg alleges these lawyers are liable because the Act requires a debt collector to cease collection activities once a debtor disputes the validity of the debt.[17]

On August 24, 2015, Gregg sent Attorney Cressman a "Notice of Demand and Intent to Sue Unsubstantiated Claim Interest and Dispute of Alleged Debt".[18]  The notice opens "As an officer of the court, I accept your oath and your professional liability insurance in this matter."[19]  Gregg further requested the Phelan Firm present various tax forms, evidence of an agency relationship, and other information.[20]

On September 2, 2015, Defendant Davis filed a notice of a continued sheriff's sale on the state court docket.[21]  On November 11, 2015, the sheriff sold Gregg's property at sheriff's sale for $45,000 to the Phelan Firm.[22]

## II.   ANALYSIS

The Phelan Defendants move to dismiss for, among other reasons, failure to state a claim.[23]  We find Gregg fails to state a claim upon which relief can be granted under the Act and dismiss his amended complaint.[24]

### A.   Gregg fails to state a claim under § 1692g.

The Act requires a debt collector provide specific information in its initial communication to a debtor or in a communication sent five (5) days after the initial communication:

> (1) The amount of the debt;
> (2) The name of the creditor to whom the debt is owed;
> (3) A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.[25]

If a debtor disputes the debt's validity, the Act requires the debt collector cease all collection efforts until the verification is sent to the debtor.[26]  "[I]n order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor."[27]  We evaluate whether the information is "conveyed effectively" from "the perspective of the least sophisticated debtor".[28]  This standard aims to protect, "all consumers, the gullible as well as the shrewd."[29]  But the standard also "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."[30]  "The validation notice must 'effectively' explain the debtor's rights, and not 'be overshadowed or contradicted by accompanying messages from the debt collector.'"[31]

The Phelan Firm's April 10, 2015 letter complies with the Act and Gregg does not actually challenge whether it does.  Instead, Gregg contends the Phelan Defendants violated the Act by failing to respond to his validation request within five (5) days.[32]  Gregg contends the Phelan Defendants received his dispute notice on April 29, 2015 and had until May 5, 2015 to respond.[33]

Gregg misconstrues the Act's relevant language.  Section 1692g(a) requires debt collectors to send a validation notice within five (5) days of the "initial communication" with the debtor, "*unless the following information is contained in the initial communication*".[34]  Thus, when "[f]aced with cases in which the validation notice did accompany an initial communication, but the plaintiff argued that the Act was violated by subsequent communications lacking such a notice, courts have concluded that a debt collector has no obligation to send a validation with any communication other than the initial communication."[35]  Accordingly, the

4

five (5) day window only applies where the initial communication does not contain the information required by § 1692g(a).

Given the above reasoning, Gregg's argument the Phelan Defendants did not respond within five (5) days of April 29, 2015 must fail. The April 10, 2015 debt collection letter contained all the required information under § 1692g(a) and Defendant need not send additional validation notice.

Further, the five-day window does not apply to limit the amount of time a debt collector has to respond to a verification request from the debtor. Section § 1692g(b) does not require the debt collector respond to a debtor's debt validation request in a specific amount of time. Rather, the Act requires debt collectors to "cease collection of the debt".[36] Theoretically, a debt collector could be in compliance with the Act if it never responds to a debtor's request, so long as it abandons its collection activities with regard to the debt.[37]

The question then becomes two-fold: (1) did the Phelan Defendants actually respond to Gregg's April 24, 2015 validation request? and (2) did they do so before resuming collection activities? Gregg alleges the Phelan Defendants failed to "respond to Complainant's Proof of Validation."[38] Gregg admits the Phelan Defendants responded to his validation request on June 17, 2015.[39] This judicial admission underscores Gregg's misunderstanding of the Act.[40] Gregg asserts the Phelan Defendants violated the Act by responding on June 17, 2015, more than five (5) days after receiving the notice of dispute. But as detailed above, there is no time limitation on the debt collector's response. Even construing the facts alleged as true, coupled with Gregg's own judicial admission, he cannot sustain a claim against the Phelan Defendants for failing to respond.

We next consider whether the Phelan Defendants ceased all collection activities with regard to the debt until they responded on June 17, 2015. Gregg alleges Defendants violated the Act by filing a "Praecipe to issue writ" on April 16, 2015, an "affidavit of service of notice of sale" on May 6, 215 and a "notice of continued sale date" on June 17, 2015.[41]

None of these filings are "collection activities". Attorney Cressman filed the "praecipe to issue writ" before Gregg's April 24, 2015 notice of dispute. A debt collector is only required to cease collection activities when the "consumer notifies the debt collector in writing" of its dispute as to the debt.[42] The May 6, 2015 "affidavit of service" can hardly be classified as collection activity as it informs the state court the Phelan Defendants properly served Gregg with a previously filed document. The June 17, 2015 "notice of continued sale date" is not a collection activity. It is the antithesis of a "collection activity" because it tells Gregg the Phelan Defendants are refraining from further steps to collect the debt. Moreover, it occurs after the date on which Gregg admits the Phelan Defendants responded to his notice of dispute, thus relieving the Phelan Defendants of their duty to refrain from engaging in collection activities.[43]

Taking as true his factual allegations, along with Gregg's admissions in his Opposition, he cannot sustain a § 1692g claim. The Phelan Defendants' failure to respond to his notice of dispute within five (5) days does not violate the Act. Further, as Gregg admits the Phelan Defendants responded to his request on June 16, 2015, and because we find Gregg's allegations insufficient to show collection activities before June 16, 2015, Gregg fails to plead Defendants violated § 1692g(b).

    **B.    Gregg fails to state a claim under § 1692e.**

Section 1692e prohibits debt collectors from using "false, deceptive, or misleading representation or means" to collect a debt.[44] Gregg alleges the Phelan Defendants engaged in prohibited conduct by misrepresenting (1) "the purported scope of entitlement rights to collect . .

6

. on behalf of their clients" and failing to provide evidence of their "clients' beneficial interest in the alleged debt"; (2) the amount of debt as $64,679.57 when the loan was initially for $67,000; and (3) the Phelan Defendants would cease all collection activity until they responded to his notice of dispute.[45]

Gregg's allegations are insufficient under § 1692e.  We are unable to find language in the Act requiring a debt collector provide a "scope of entitlement rights" of their client.  The Act requires the debt collector to provide certain information including identifying itself as a debt collector, the amount of the debt, and the name of the creditor.[46]  The Phelan Defendants disclosed they were debt collectors attempting to collect the debt, the amount of the debt, and the name of the creditor.  Further, Gregg knew of the Phelan Defendants because they entered an appearance in the foreclosure action almost nine (9) months before the April 10, 2015 letter.[47] Gregg's allegations demonstrating his discontent about not getting the particular information he desired are not sufficient to hold the Phelan Defendants liable under the Act.

Next, Gregg's allegations regarding the amount of the debt do not raise Gregg's "right to relief above the speculative level."[48]  Gregg simply alleges the principle balance amount in the April 10 letter is wrong because the initial loan amount was higher.[49]  However, Gregg's citation to the original mortgage documentation does nothing to show why the principle amount listed in the April 10, 2015 letter is inaccurate.  The lender made the original loan in 2006.[50]  Gregg does nothing to connect the dots from 2006 to 2010, when the creditor filed the foreclosure action. We have no facts evidencing why the principle balance is inaccurate.  Gregg does not plead facts showing he never made payments on the mortgage, which could possibly show the amount is inaccurate.  The mandate to construe a *pro se* party's complaint liberally, especially after two

attempts, does not relieve Gregg of pleading facts amounting to more than conclusory statements or speculation.[51]

Because we already found the Phelan Defendants ceased all collection activities until they responded to Gregg, Gregg's allegation they misrepresented their intent to do so must fail. Gregg's claim under § 1692e is dismissed.

### III.   CONCLUSION

Gregg does not allege facts giving rise to a plausible Act claim against the Phelan Defendants. The Act's remedial purpose is to curb "[a]busive debt collection practices" and to effectuate that purpose courts are required to construe its language broadly.[52] But we cannot construe the language so broadly so as to conjure a claim where none exists. After two attempts, Gregg fails to plead facts sufficient to state a claim under the Act. We dismiss his claims with prejudice.

---

[1] We previously recited the facts of this case in an earlier memorandum dismissing Gregg's *pro se* complaint and granting him leave to amend. *Gregg v. Cressman*, No. 15-6577, 2016 WL 1688757, at *1-2 (E.D. Pa. Apr. 26, 2016). As we write primarily for the parties, we will only detail the new allegations contained in the Amended Complaint.

[2] Gregg sues Defendant attorneys Francis S. Hallinan, Paul Cressman, Adam H. Davis, and their employer Phelan, Hallinan, Diamond & Jones, LLP (the "Phelan Firm") (collectively, the "Phelan Defendants"). Gregg concedes Lawrence T. Phelan should be dismissed as a defendant in this matter. (ECF Doc. No. 25, at 2) Gregg does not provide any more clarity but as a *pro se* litigant we will liberally construe his complaint. Gregg maintains references to "Section 5 of the FTC Act", the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and the Real Estate Settlement Procedures Act. We dismissed these claims in our previous Memorandum and find Gregg has not adduced sufficient evidence to resuscitate these claims. (ECF Doc. No. 16, at n.16) They are dismissed again.

[3] (Amend.Compl., ECF Doc. No. 19 at ¶ 13; Ex. A.)

[4] (*Id.* at Ex. A.)

[5] (*Id.*)

---

[6] (*Id.*)

[7] (*Id.*)

[8] (*Id.* at ¶ 14; Ex. B.)

[9] (*Id.* at ¶ 15; Ex. C.)

[10] (*Id.*)

[11] (*Id.*)

[12] (*Id.*)

[13] (*Id.*)

[14] (*Id.* at ¶ 21.)

[15] (*Id.* at ¶ 16.)

[16] (*Id.* at ¶ 17.)

[17] (*Id.* at ¶¶ 37-38.)

[18] (*Id.* at ¶ 18; Ex. D.)

[19] (*Id.* at Ex. D.)

[20] (*Id.*)

[21] (*Id.* at ¶ 19; Ex. B-3.)

[22] (*Id.* at 20; Ex. B-4.)

[23] We declined to apply the *Rooker-Feldman* doctrine to bar Gregg's claims in his original complaint. The Phelan Defendants provide the same argument as their first motion and we again decline to apply the doctrine. The Phelan Defendants also contend the claims fall outside of the Act because of Gregg's bankruptcy discharge. But we do not find this argument persuasive as 1) our court of appeals has stated simply because a proceeding against a debtor is *in rem* rather than *in personam* does not preclude a finding of debt collection activity; and 2) there is "no broad categorical preclusion" when it comes to application of the Bankruptcy Code and the Act. *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005); *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 278 (3d Cir. 2013).

[24]     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

[25] 15 U.S.C. § 1692g(a).

[26] *Id.* at § 1692g(b).

[27] *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000).

[28] *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991).

[29] *Wilson*, 225 F.3d at 354 (citation omitted).

[30] *Id.* at 354-55.

[31] *Dutterer v. Thomas Kalperis Int'l, Inc.*, 767 F. Supp. 2d 504, 508 (E.D. Pa. 2011) (quoting *Graziano*, 950 F.2d at 111).

[32] (ECF Doc. No. 25, at 3,5 & 7.)

[33] (*Id.* at 5.)

[34] §1692g(a) (emphasis added).

[35] *Peterson v. Portfolio Recovery Assocs., LLC*, 430 F. App'x 112, 114-115 (3d Cir. 2011) (citations omitted).

[36] § 1692g(b).

[37] *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997); *Smith v. Transworld Sys., Inc.*, 953 F.3d 1025, 1031 (6th Cir. 1992); *Jacques v. Solomon & Solomon, P.C.*, 886 F.

Supp. 2d 429, 432-33 (D. Del. 2012); *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1242-43 (D. Haw. 2002).

[38] (ECF Doc. No. 19, at ¶ 42)

[39] (ECF Doc. No. 25, at 5-7)

[40] "Judicial admissions are concessions in pleadings or briefs that bind the party who makes them." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006) (citation omitted).

[41] (ECF Doc. No. 19, at ¶¶ 14, 16, 17, 32, & 37-38)

[42] 15 U.S.C. § 1692g(b).

[43] Since Gregg admits the Phelan Defendants responded to his notice on June 16, 2015, any collection activities after this date do not violate the Act.

[44] 15 U.S.C. § 1692e.

[45] (ECF Doc. No. 19, at ¶¶ 26-28, & 37.)

[46] 15 U.S.C. §§ 1692e(11), 1692g(a)(1)-(2).

[47] (ECF Doc. No. 21, Ex. A, at 20)

[48] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

[49] Gregg also argues, even if the amount is correct the Phelan Defendants should "have taken steps to verify the balance". (ECF Doc. No. 25, at 12)  While this is flawed for the logical reason that if the amount is accurate there would be no need to verify it, it suffers from a legal flaw as well.  The ACT does not impose an obligation on the debt collector to "investigate the debt's validity." *Jarzyna v. Home Props., L.P.*, 114 F. Supp. 3d 243, 264 (E.D. Pa. 2015)  "Rather, the debt collector must merely forward supporting information along to the debtor, so that the debtor can better understand the alleged debt's origin and perhaps dispute it further, if warranted." *Id.*

[50] (ECF Doc. No. 19, at Ex. E.)

[51] Gregg does not challenge any other amount listed in the April 10, 2015 letter as inaccurate or misleading.

[52] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).